Choate, D. J.
This is a proceeding for the re-examination of a proof of debt filed by the wife of the bankrupt for the sum of $38,672.10. In the proof of the claim it is described as “a balance due deponent for real estate, bonds, mortgages, notes and drafts conveyed, consigned, transferred and set *308 over to the said Henry Corse, Jr., by deponent, and by the executors' of deponent’s father’s estate, with deponent’s consent, being in part the interest of deponent in said estate, and for moneys lent and advanced to said Henry Corse, Jr., by deponent. The above amount includes principal and interest to the date of filing the petition. Several creditors object to the proof on the grounds — (1) that the transaction out of which the claim grew was a gift from the claimant to the bankrupt; (2) that it is barred by the statute of limitations; and (3) that it has been wholly paid and satisfied.
The point most strenuously insisted upon on the argument was that the husband received the real estate and other property as trustee, having been substituted for the executors, under the will of his wife’s father, by the concurring action of the executors, the wife and himself; that the personal property has been all invested in improvements upon the real estate, and that the real estate was afterwards transferred to the wife, whereby the trust under which the property was held was fully performed, and that in this way the claim has been satisfied and paid, or that the personal property, with her consent, has been expended on the land and the whole conveyed to her. While this position was not taken at the outset as the objection, but payment simply was alleged, yet the point has been argued as if there was no formal objection to the contesting creditors resting their defence to the proof of debt on this ground, and I have examined it upon the merits.
The wife of the bankrupt was the daughter of Samuel Knapp, of Haverstraw, who died, leaving a will dated February 18,1859. He left one son and one daughter, who intermarried with the bankrupt February 2, 1865. At the time of her marriage she was a little over 18 years of age. By the will the residue of the estate was equally divided between testator’s son and daughter. The executors were appointed guardians of the children, and by the terms of the will the executors were made trustees of the daughter’s half till her marriage, or until she should arrive at the age of 21 years. As to the continuance of this trust after that time it was left to the *309 discretion of the executors. They were directed to pay over to her on her marriage, or coming of age, the income on her share which should have accrued during the next preceding year,- and as to the principal the will provided as follows:
“I leave it discretionary with my said executors to pay to my said daughter the whole or such part of the share coming to her, and at such time or times after she shall have arrived at the age of 21 years, as they or the survivor of them shall deem fit and proper; hut it is my will if she shall marry a steady, temperate and prudent man, then, and in that event, I direct my executors to pay her one-third of the accumulated principal of her share in one, one-third in three, and the remaining one-third thereof in five years after she shall have married, and after she shall have arrived at 21 years of age; it being understood that it is my will that my said daughter shall receive annually, after she arrives at 21 years, the interest, income or profits of the share belonging to her and remaining in the hands of my executors.”
The will gave the executors full power to sell the real estate and invest the proceeds in bond and mortgage on unencumbered property. Until the sale of the real estate the will empowered the executors “to take possession” of it, “to cultivate, work and lease the same in such manner as shall be most productive and beneficial to the interests of my said estate,” and “to apply so much of the annual profit, increase and income of the said real estate to the necessary improvements and repairs thereof.”
Soon after the marriage of the daughter — this claimant— she became dissatisfied with the executors’ management of the estate, and they were cited before the surrogate to account. This proceeding led to an arrangement being made by them with the bankrupt and his wife, by which all the daughter’s, share of the property was to be transferred to her husband at. her request, he giving them a bond of indemnity. To carry this arrangement into effect the following written instruments-were executed: Mrs. Corse executed, under seal, an agreement with the executors, dated March 3, 1866. It recited, her interest under her father’s will, her marriage, and the- *310 fact that she was under age, and that it was her wish “that the said Henry Corse, Jr., my said husband, should take into hie possession and have the management of the estate and property which is So bequeathed to me in and by the said will of my father, and which is therein and thereby placed in the hands of the said executors as trustees thereof for me.”
It then proceeds: “Now, therefore, I, etc., do hereby consent that the executors, etc., shall and may, and I do hereby direct, authorize and empower them, etc., to assign, transfer, set over and deliver unto the said Henry Corse, Jr., my said husband, my share, etc., of the estate of my said father, to which I now am, or shall hereafte'r become, entitled, under and according to the provisions of the said will, and to make, execute and deliver Unto him all instruments which shall be requisite and necessary in the law for the full and absolute assignment and transfer of the same unto him forever; hereby as fully ratifying and confirming each and every act which the said executors and trustees shall do, by virtue of this consent and authority, as I might or could do if I had attained my majority; and hereby as fully, and in all respects, exonerating, and holding harmless and free, and discharged from every and all liability, the said executors and trustees, and each of them, etc., as I might or could do if I had attained my majority, for each and every act and thing whatsoever that they, or either of them, may do by virtue of this consent and authority.”
It then continues: “Now, thereforé, in consideration of the assignment and transfer so to be made, etc., I, etc., do hereby consent, promise and agree to and with the said executors and trustees, for mySelf, my heirs, etc., that when I shall have attained the age of 21 years I will make, duly execute and deliver unto them, or the survivor of them, etc., all necessary and proper releases and acquittances in the law wherein and whereby they, and each of them, shall forever be released and discharged from all liability, claim and demand whatsoever, for or oh account of any legacy, bequest, or provision contained in the said will, in my favor or behalf, eta., and for or on account of any a!et or thing they, of either *311 of them, shall or may do by virtue of the foregoing consent and power.”
The executors and the bankrupt executed under seal an agreement of the same date, March 3, 1866. It recites the provisions of the consent and agreement executed by Mrs. Corse. It also recites that said Henry Corse, Jr., had agreed to deliver to the executors a good and sufficient bond, with surety to indemnify and keep them harmless in the premises.
It then proceeds as follows: ”Now, this agreement witnesseth, that in pursuance of the consent and authorization aforesaid, of the said Nancy J. Corse, and in consideration of the covenant and agreement herein contained, on the part and behalf of the said party of the first part, (i. e., Henry Corse, Jr.,) the said parties of the second part, as executors, etc., agree to and with the said party of the first part that they will assign, transfer, set over and deliver unto him, by good and sufficient assignments in writing, all the share or proportion of the estate of the said Samuel Knapp, deceased, to which his said wife now is or shall hereafter become entitled by virtue of the bequests and provisions contained in his said will, etc., in her behalf and for her benefit, upon the said party of the second part delivering unto them the indemnity bond aforesaid. And the said party of the second part, in consideration of the agreement herein contained, on the part and behalf of the said parties of the first part, covenants and agrees to and with the said parties of the first part, as such executors, etc., that he will faithfully and in all things carry out and fulfil each and every of the provisions of the said will in respect to the legacy therein bequeathed to his said wife, and all the directions therein given with reference to the disposition of the same, and all property which he shall take in right of his said wife, as a legatee under said will.”
By a deed executed by the executors, and dated the seventh of March, 1866, and purporting to be executed under the power of sale given to them in the will, they conveyed to the bankrupt, for a price or consideration named of $10,000, a farm belonging to the estate of the testator at Glaseo, in the county of Ulster and state of New York. The conveyance was *312 in fee, with special covenants against encumbrances. It was not acknowledged till November, 1866, nor recorded till January, 1867. It is assumed in his argument by the contestant’s counsel that this deed, though apparently a sale by the executors under their power of sale, was merely the means of transferring to Mr. Corse a part of his wife’s share of the property pursuant to the agreement. The bond of indemnity dated March 3, 1866, recites that Nancy J. Corse had executed a consent in writing, and thereby directed, authorized and empowered the executors and trustees to assign, transfer and set over unto the above bounden Henry Corse, Jr., all the share, etc., of the estate to which she is now or shall hereafter become entitled as such legatee, etc. It also recites that the executors have, “in pursuance of such consent and authority, entered into an agreement with said Henry Corse, Jr., so to assign, transfer and set over unto him the share, etc., of said estate to which she is or will hereafter become entitled as such legatee,” etc. The condition of the bond was that said Henry Corse, Jr., “shall, in all respects, carry out and fulfil the provisions and directions of the said will as to the legacy therein bequeathed, and the provisions therein contained, to and for the benefit of the said Nancy J. Corse;” and, also, indemnify and save harmless the said executors from all claims of Mrs. Corse, her heirs, or next of kin, on account of said transfer, or on account of her said share of the estate.
The property at Glaseo consisted of a farm and brickyards. The house on the premises was dilapidated and out of repair, and the brick-yards were in similar condition. Besides this property, and soon after its transfer to him, the executor also transferred to Mr. Corse bonds and mortgages and notes belonging to the estate as part of her share. Mrs. Corse was also entitled to certain property which came from her mother’s father, and which was paid over to Mr. Corse in the year 1867, amounting to $8,858. Soon after the property at Glaseo was conveyed to Mr. Corse he began to make improvements on it. He built a new house and rebuilt the brick-yards. He went there to live with his family, and went *313 into the brick making business, which he continued to carry-on till he failed, in 1875. The counsel for contestants claims that he expended in these improvements and in the purchase of adjoining property, which was, or was thought, necessary for carrying on the business successfully, about $26,000, and it is insisted that all the personal property received from the executors, together with that received from his wife’s grandfather’s estate, were so expended with her consent, and for the benefit of the property, by him as trustee. Most of this money was invested in these improvements before she came of age.
After Mrs. Corse came of age she executed a release of the executors under seal. It is dated March 25, 1868. It recites that her father by his will gave and bequeathed to her “the equal undivided one-half of the residuary personal and real estate,” and that she had intermarried with Henry Corse, Jr., and then was his wife, and had attained her majority on the first day of October, 1867, and that the executors on or about October 1, 1865, rendered an account and settled the estate “under the arrangements and stipulations then made and entered into by and between the said executors and the residuary devisees and legatees under said will,” and that the said executors did, “in pursuance of such settlement, arrangement and stipulation, deliver to and pay over unto the said Nancy J. Knapp her property in and share of the said estate in cash and in securities thereof.”
It then proceeds as follows: “Now, therefore, I, etc., do hereby acknowledge the receipt from the said executors of the property and legacies so given and bequeathed to me in and by said will; and I do hereby acquit, release and forever discharge the said executors of and from all legacies, dues and demands whatsoever, under and by virtue of the will of the said Samuel Knapp, deceased, or to which I am or may be entitled out of his said estate.”
At the same time the bankrupt also executed a release to the executors on the same paper, as follows: “Whereas, I, Henry Corse, Jr., the husband of said Nancy J. Corse, received from said executors of the will of Samuel Knapp, deceased, in right of my said wife, the cash, property and securities to *314 which she became entitled under said will, and gave to said executors an indemnity bond against any claim which my said wife, or her heirs, or next of kin might make against them, pending her attaining her majority, and the making of the foregoing release for them; and I do for myself, etc., upon the redelivery to me of said bond, etc., release, acquit and discharge the said executors of and from all claim and demand whatsoever, which I now have or have had against them, etc., •or against or out of the estate of the said Samuel Knapp.”
On the third day of March, 1875, the bankrupt conveyed to one Friend Hoar, for a nominal consideration of $10,000, the real estate which had been conveyed to him by the executors, excepting certain lots previously sold off. The same day Hoar conveyed the same premises to Mrs. Corse for a nominal consideration of $10,000, subject to two mortgages, one dated January 3, 1868, for $4,000, and the other dated August 2, 1869, for $3,000, both mortgages being executed by Corse and his wife, and which she assumed in the deed from Hoar to her. The property was at the same time, together with the adjoining property, which had been purchased by Corse to improve the brick-yards, subject to a mortgage for $6,000, executed by Corse and his wife, not mentioned in the deed. This last-named mortgage has been foreclosed, and Mrs. Corse’s equity in the property has been thereby extinguished. But in her account she gives the bankrupt credit for $10,000 on account of the transfer to her of this property. He was at that time embarrassed, and she undertook, for a few months after the transfer, to carry on the business, her husband acting as her agent.
The bankrupt and his wife both testify that at the time the release to the executors was executed, in the year 1868, an agreement between them was drawn up by Judge Suffernf county judge of Ulster county, respecting the property which Mr. Corse had received on her account, which agreement was destroyed by fire when their house was burned.
Mrs. Corse is unable to state the contents of the paper, further than that it was an agreement to repay the moneys received by him as a loan. Mr. Corse testified that it was to *315 the effect, “that he was to return her, on demand, either the same real estate or the value of it, and the amount received from the executors of her father’s estate, and grandfather’s estate, and to give her security, as she should demand it at any time.”
They also both testified that she had frequently made demand for payment, or for security, and that she had asked for a mortgage on the real estate. He had refused on the ground that it would injure his credit.
It is claimed on the part of the contesting creditors that there is not sufficient proof of the existence of the lost paper. But it is evident that if there was no such paper drawn up, or if its contents were substantially different from what is testified to by these two witnesses the contestants could have called Judge Suffern to contradict them. He drew the releases from these parties to the executors, and took their acknowledgments. The fact that such an agreement was executed, even if its terms are a little uncertain, repels entirely the theory that the transfer of all this property to the husband was a gift from the wife. The question is, therefore, •upon what terms and under what obligation in respect to it ,did he hold what he so received. It is argued by the learned counsel for the contesting creditors that he took it as trustee for fhe wife; that he invested the personal property in the real estate, and by the conveyance through Hoar, in 1875, has transferred the whole, both the real estate and the personal property, in the form of improvements on the reality, to her, and so that he has discharged his trust and performed his agreement with her, made in 1868, if there was any such agreement, and it was binding on him.
It is doubtless true that by accepting from the executors this property, with full knowledge of the trust under which they held it, the bankrupt became chargeable upon the suit of his wife, or her legal representatives, with those trusts. At any time before she came of age he would have been charged as her trustee of this property, in any suit brought for that purpose, in the same way in which the executors would have been. By no agreement between them and him, *316 or between them and his wife, could the property be discharged from the trusts of the will during her minority. But the will gave the executors full power and authority, in their discretion, to-terminate the trust at her majority, and then to transfer the property to her absolutely; and what was done in March, 1866, seems to me clearly to have been done in anticipation of this termination of the trust in October, 1867. Of course they could not legally, and so as to absolve themselves from any liability as trustees, thus surrender it to her before October, 1867. They recognized this in their agreements with her, and with her husband, and guarded against the liability by requiring of him a bond of indemnity. The stipulation in the agreement with her for a release, to be given when she came of age, shows clearly that they treated the property as being held by them on such terms that they would be at liberty to surrender it absolutely to her at her majority; and when the releases were given in March, 1868, the time had come when they could absolutely surrender the estate to her, free from the trust, and her release acknowledges, on her part, that they have done so. The release given by him strongly confirms the view that the purpose of the instruments was to terminate the trusts.
The contemporaneous agreement between the husband and wife shows also, I think, that both the husband and wife treated the trust as at an end, and they undertook to deal with each other on the basis that property belonging to her had come into his hands. From that time, therefore, if not from an earlier time, I think he held the property as having been transferred to him on her account as money and other property of hers received by him, which, or its value, at her election, she could at any time in equity demand, with or without an express promise to restore; the circumstances of the transfer not being such as to imply a gift of the property to him. Nor under the will, if he is to be treated as a trustee while holding the real estate, between the date of its transfer to him and the- date of the release, had he any authority to invest any part of the principal of his wife’s residuary legacy in improvements, or in rebuilding the house or the brick *317 yards. The only power given is to invest part of the income of the real estate in its ¡improvement. He cannot, therefore, as a trustee, justify the disposition that he made of any part of the personal property, and if he held it as trustee he is now liable for its value, with interest, on that ground. The wife has the right certainly, to treat the transfer of the real estate to him as a purchase, which it purported to be on its face, and to charge him with the receipt of the agreed price, $10,000, as part of her legacy. The executors had power to sell and convert the real estate into personalty. In the exercise of that power they conveyed it to him for $10,000. He retained the price as the money of his wife, part of tbe legacy coming to her on her majority, and which the executors agreed with her to pay to him in advance of that event on being indemnified by bond, and on her promise to release them when she came of age.
I do not see how the husband could object to this being treated as a payment to him as $10,000 in money on her account. In the release which she gave to the executors it is recited that the executors did deliver to her her share of the estate “in cash and in secwrities thereof." And in the release given by the bankrupt to them at the same time he recites that he received from them, in right of his wife, “the cash, property, and securities to which she became entitled.” Thus all parties seem to have treated the transfer of tbe real estate as a sale. He took the title in fee in himself, and improved and used it in his own business. As against her claim to account for the price which belonged to the estate he would be estopped to claim that he held it on a trust that he did not acknowledge, and to make that trust a defence to her claim.
I do not see in the evidence any proof that the wife has ever waived her right to treat it as a purchase by him. All his subsequent acts show that he treated the land as his own. Her joining in the mortgages, or her knowledge of his use of her money in improving his real estate, cannot affect her claim to reimbursement. The investments were his own, and made upon his own responsibility and in his own business. It is not proved that they were made at her request, or that she *318 assumed the risk of them. When this property was transferred to her in 1875, as it then was, with three mortgages on it not in existence when he first took it, the understanding was that the transfer should he on account of her claim, as payment of $10,000. This might have been attacked, perhaps, as a preference; if bankruptcy had then followed by other creditors; but the understanding, as testified to, is in no way inconsistent with the other evidence, going to show that both parties regarded the husband as indebted to the wife for the amounts received from the estates of her father and grandfather, including this sum of $10,000, the price at which he bought the land of the executors. Therefore, because the land was his own and not hers, as well as for the reasons already given, the laying out of the proceeds of the personal property on the real estate did not operate as a repayment to her of those proceeds; and I see no reason why, in equity she cannot claim against him the balmce of her legacy, which he has received. No part of it has been paid except the $10,000, in 1875, which has been credited.
The claim is misdescribed in the bankrupt’s schedules. This is a circumstance impairing somewhat, possibly, the weight to be given to his testimony. But I do not think it of sufficient importance to overthrow the case made in favor of the proof of debt. There is proof that the schedule was prepared by counsel on imperfect information. As the wife has frequently demanded payment or security I think she has the right to interest, which, perhaps, she might not be entitled to-if she had consented to his using her money for a long course of years without any demand, and in the business upon which they both depended for support. The circumstances might be such as to imply that the use was a gift from the wife. But such is not this case.
As some objection is made to the amount of interest as computed in the proof of debt, there may, if the contesting creditors desire it, be a reference to the clerk to compute the interest. Otherwise the proof of debt is sustained.